IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

HELENA CHEMICAL COMPANY                                                          PLAINTIFF

V.                                                                  NO. 4:15-CV-00096-DMB-JMV

ANDREW B. AYLWARD
D/B/A BRIG AYLWARD FARMS                                                         DEFENDANT

## ORDER

This breach of contract action is before the Court on Helena Chemical Company's second motion for default judgment. Doc. #14. For the reasons below, the motion will be granted.

## I
## Procedural History

On July 28, 2015, Helena Chemical Company ("Helena Chemical") filed a complaint against Andrew B. Aylward d/b/a Brig Aylward Farms. Doc. #1. The one-count complaint alleged that Aylward and Helena Chemical entered into a Credit Sales Agreement ("Agreement") for agricultural products, under which "Aylward was required to make payment on all invoices within thirty (30) days [and i]f Aylward failed to make such payments[,] a finance charge equal to 18% was [to be] charged on the outstanding balance." *Id.* at ¶ 6. Helena Chemical alleged that Aylward breached the Agreement "by failing to make any payments under the … Agreement since June 15, 2015" and that "[a]s of July 10, 2015, Aylward owes Helena Chemical $103,614.78 [plus interest of] of $1,349.91 per month." *Id.* at ¶¶ 8–9. The complaint sought "[a] judgment … in the amount of $103,614.78 plus interest of $1,349.91 per month until judgment, post judgment interest, and reasonable attorneys' fees and costs of collection." *Id.* at ¶ 13(1).

Helena Chemical attached the Agreement to the complaint. Doc. #1-1. Of relevance here, the document includes a Tennessee choice of law clause and provides:

> In the event the purchaser fails to make payments as required … the account may be considered by Helena … to be in default, and Helena may elect to declare any amounts outstanding immediately due and payable, the purchaser shall be responsible for the payment of all costs of collection incurred by Helena, including expenses and reasonable attorney's fees in such event, or in the event of any other legal action or other resolution proceeding.

*Id.* at ¶¶ 6, 18.

On August 3, 2015, Helena Chemical filed a Proof of Service stating that Aylward was served with a summons and copy of the complaint on July 30, 2015. Doc. #3. On August 25, 2015, Helena Chemical filed a motion for entry of default and a supporting affidavit averring that Aylward "failed to answer, plead or otherwise defend as to the complaint …." Doc. #4-1 at ¶ 3. The Clerk of Court entered default on August 26, 2015. Doc. #5. Five days later, on August 31, 2015, Helena Chemical filed a motion for default judgment. Doc. #6.

On December 11, 2015, this Court, noting deficiencies in the complaint's jurisdictional allegations of Helena Chemical's citizenship, denied the motion for default judgment, and directed Helena Chemical to show cause why the case should not be dismissed for lack of subject matter jurisdiction. Doc. #7. On December 22, 2015, Helena Chemical responded to the order to show cause and filed a motion to amend to correct its jurisdictional allegations. Doc. #9. United States Magistrate Judge Jane M. Virden granted the motion to amend and, on December 28, 2015, Helena Chemical filed an amended complaint. Doc. #10. Beyond the corrected jurisdictional allegations, the amended complaint contains the same allegations as the original complaint and is accompanied by a copy of the Agreement. *Id.* A copy of the amended complaint was mailed to Aylward via certified mail on January 25, 2016. Doc. #11.

Aylward did not answer the amended complaint and, on February 12, 2016, Helena Chemical filed a motion for entry of default. Doc. #12. The Clerk of Court entered default on February 22, 2016, and that same day, Helena Chemical filed a second motion for default

judgment. Doc. #14. In support of the motion, Helena Chemical submitted an affidavit from Gary Yochum, a Credit Manager with Helena Chemical, which repeats and attests to the accuracy of the allegations in the original and amended complaints. Doc. #14-1. Yochum avers that, as of August 27, 2015, Aylward owed Helena Chemical $106,314.60 for amounts due under the Credit Sales Agreement. *Id*. at ¶ 5.

On March 31, 2016, this Court issued an order finding that Helena Chemical had not established liquidated damages as to the amount of its attorney's fees and that, therefore, an evidentiary hearing was required before the entry of a default judgment. Doc. #15. An evidentiary hearing on the issue of damages was held on April 13, 2016. Doc. #17.

At the hearing, J. Fred Spencer, Jr., counsel for Helena Chemical, introduced a billing summary showing that he has billed Helena Chemical $4,467.20 in attorney's fees and costs for the litigation. Spencer explained that he graduated from the Mississippi College School of Law in 1987 and that he has worked in bankruptcy creditor rights since 1987. He has an average hourly rate of $275, but only charges Helena Chemical $235.

## II
## Analysis

"Under Fifth Circuit law, there are three steps to obtaining a default judgment: first, default by the defendant; second, clerk's entry of default; and third, entry of a default judgment." *Gray v. MYRM Holdings, L.L.C.*, No. A-11-cv-180, 2012 WL 2562369, at *3 (W.D. Tex. June 28, 2012) (citing *N.Y. Life. Ins. Co. v. Brown*, 84 F.3d 137, 141 (5th Cir. 1996)) (emphases omitted). Here, there is no question the first two steps have been satisfied. Accordingly, the question becomes whether the entry of a default judgment is warranted. This question, in turn, requires three distinct inquires: (1) whether "entry of default is procedurally warranted;" (2) "whether there is a sufficient basis in the pleadings for the judgment;" and (3) "what form of

3

relief, if any, the plaintiff should receive." *J & J Sports Prods., Inc. v. Morelia Mexican Rest., Inc.*, 126 F.Supp.3d 809, 813–14 (N.D. Tex. 2015).

### A. Procedural Justification for Default

In determining whether a default judgment is warranted, a court should consider six factors: (1) "whether material issues of fact are at issue;" (2) "whether there has been substantial prejudice; "(3) whether the grounds for default are clearly established; (4) "whether the default was caused by a good faith mistake or excusable neglect; (5) "the harshness of a default judgment;" and (6) "whether the court would think itself obliged to set aside the default on the defendant's motion." *Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998).

First, Aylward's failure to respond or answer the complaint has resulted in the absence of material issues of fact. *See John Perez Graphics & Design, LLC, v. Green Tree Inv. Grp., Inc.*, 2013 WL 1828671, at *3 (N.D. Tex. May 1, 2013) ("Green Tree has not filed a responsive pleading or otherwise appeared in this case, and thus has not contested any facts presented in Plaintiff's complaint."). Second, the failure to respond has caused prejudice to Helena Chemical because a "failure to respond … threatens to bring the adversary process to a halt." *Id*. Third, the grounds for default (failure to answer or respond to the complaint) have been clearly established. Fourth, there is no evidence the default was caused by good faith or excusable neglect. Fifth, while default judgment is a harsh remedy, any harshness is mitigated where, as here, the defendant has had substantial time to correct the default. *Id*. Finally, the Court is aware of no grounds which would justify the setting aside of the default. In sum, where, as here, a defendant has been properly served and has failed to respond to the complaint or otherwise appear in the action, the relevant factors justify entry of a default judgment. *J & J Sports*, 126 F.Supp.3d at 814–15.

### B. Sufficient Basis in Pleadings for Default Judgment

Helena Chemical's amended complaint asserts a single claim of breach of contract.[1] *See* Doc. #10 at ¶ 7, 11–13.

Under Tennessee law,[2] the essential elements of a breach of contract claim are: "(1) the existence of an enforceable contract, (2) nonperformance amounting to a breach of the contract, and (3) damages caused by the breach of the contract." *C & W Asset Acquisition, LLC v. Oggs*, 230 S.W.3d 671, 676–77 (Tenn. Ct. App. 2007). Here, Helena Chemical has pled the existence of a binding contract (the Agreement), Aylward's breach of this contract, and damages arising from the breach. Accordingly, there is a sufficient basis in the pleadings for default judgment.

### C. Relief

In its motion for default judgment, Helena Chemical seeks $106,314.60, plus post-judgment interest, for amounts due under the Credit Sales Agreement, Doc. #14; and $4,467.20 in attorney's fees and costs, Doc. #17-1.

---

[1] The amended complaint does not include a title for the only count. However, Helena Chemical alleges that Aylward owes money under the Agreement and that he has refused to pay the money owed to Helena Chemical. *See* Doc. #10 at ¶¶ 7, 11–13. Under these circumstances, the Court interprets the count as asserting a breach of contract claim.

[2] As mentioned above, the Agreement contains a Tennessee choice of law clause. Generally, Mississippi courts will enforce a choice of law provision unless:

> the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or ... application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which ... would be the state of the applicable law in the absence of an effective choice of law by the parties.

*PIC Group, Inc. v. LandCoast Insulation, Inc.*, 718 F.Supp.2d 795, 799–800 (S.D. Miss. 2010) (quoting Restatement (Second) of Conflict of Laws § 187(2) (1971)); *see Jackson v. W. Telemarketing Corp. Outbound*, 245 F.3d 518, 522 (5th Cir. 2001) ("[A] federal court exercising diversity jurisdiction typically applies the choice of law rules of the forum state."). Helena Chemical has its principal place of business in Tennessee. Doc. #10 at ¶¶ 3. Accordingly, this Court will enforce the Tennessee choice of law provision. *See Garrett Const., Inc. v. Ashbritt, Inc.*, No. 1:09–cv–379, 2010 WL 583921, at *2 (S.D. Miss. Feb. 16, 2010) ("Under Mississippi law ... Florida is the location of Ashbritt's main office and principal place of business and the Court finds that this constitutes a reasonable basis for the selection of Florida law to apply to the contract." (citing *Kiefer v. Harris*, 125 F.3d 852 (5th Cir. 1997)).

### 1. Outstanding Balance

Where, as here, a contract involves the sale of goods, a seller is entitled to recover the contract rate for the sold goods.[3] *Harris Corp. v. Mallicote*, 514 F.Supp. 7, 7 (E.D. Tenn. 1980); *see also* Tenn. Code Ann. § 47-2-710. Additionally, a contract for goods may provide for additional remedies. *See* Tenn. Code Ann. § 47-2-719.

In this case, the contract calls for damages in the amount due under the contract, plus 18% in finance charges. In this regard, Helena Chemical has presented evidence that the amount due, including finance charges, is $106,314.60. The Court concludes that this amount is authorized under the contract and Tennessee law, and that, therefore, such amount should be awarded.

### 2. Attorney's Fees and Costs

A plaintiff in a breach of contract action may recover attorney's fees and costs under Tennessee law[4] when the breached contract authorizes such damages. *See O'Neal v. Henson*, No. 2006-02118, 2007 WL 3444476, at *3 (Tenn. Ct. App. Nov. 15, 2007) (affirming award of attorney's fees based on contractual provision); *see also Tri-State Home Improvement v. Starks*, No. 2006-1556, 2007 WL 1153119, at *6 (Tenn. Ct. App. Apr. 19, 2007) (collecting cases). It is clear the Agreement provided for reasonable attorney's fees in a collection action.

---

[3] "'Goods' means all things (including specially manufactured goods) which are movable at the time of identification to the contract for sale …." Tenn. Code Ann. § 47-2-105(1). The Court assumes that the Agreement, which covered the sale of agricultural products, was one for goods. However, this conclusion is immaterial to the analysis because a similar measure applies for installment contracts for services as well as goods. *See Tinker-Watkins Sand & Gravel, Inc. v. Parsons*, No. 2003-02048, 2004 WL 689880, at *1 (Tenn. Ct. App. Mar. 31, 2004) (affirming award of contract price for contract for goods and services).

[4] *See Grant v. Chevron Phillips Chem. Co.*, 309 F.3d 864, 875 n.37 (5th Cir. 2002) ("[T]he law is settled that when a federal court sits in diversity, entitlement to attorney's fees is governed by state law.") (emphasis omitted); *see also Newcsi, Inc. v. Staffing 360 Sols., Inc.*, No. A-14-cv-557, 2016 WL 184432, at *3 (W.D. Tex. Jan. 15, 2016) ("Fifth Circuit precedent holds that in litigation based on a contract containing a valid and enforceable choice of law clause, the parties' choice of law governs both the interpretation of the contract and the award of attorney's fees.") (citing *Exxon Corp. v. Burglin*, 4 F.3d 1294, 1299 (5th Cir. 1993)).

"[W]here an attorney's fee is based upon a contractual agreement expressly providing for a reasonable fee, the award must be based upon the guidelines by which a reasonable fee is determined." *Wilson Mgmt. Co. v. Star Distribs. Co.*, 745 S.W.2d 870, 873 (Tenn. 1988). Courts in Tennessee consider eight factors when assessing reasonableness: (1) the time devoted to performing the legal service; (2) the time limitations imposed by the circumstances; (3) the novelty and difficulty of the questions involved and the skill requisite to perform the legal service properly; (4) the fee customarily charged in the locality for similar legal services; (5) the amount involved and the results obtained; (6) the experience, reputation, and ability of the lawyer performing the legal service; (7) whether the fee is fixed or contingent; and (8) the nature and length of the professional relationship to the client. *United Med. Corp. of Tenn., Inc. v. Hohenwald Bank and Tr. Co.*, 703 S.W.2d 133, 136 (Tenn. 1986).

In this case, Spencer, Helena Chemical's counsel, represented to the Court at hearing that he has had a long relationship with Helena Chemical, that his hourly rate is similar to at least one other attorney in the community, and that he has practiced in the field of collection for more than twenty years. Under these circumstances, also considering the billing summary submitted, the Court concludes that $4,467.20 in attorney's fees and costs is a reasonable award.

### 3. Post-Judgment Interest

Post-judgment interest, which is governed by federal law,[5] "is awarded as a matter of course." *Meaux Surface Prot., Inc. v. Fogleman*, 607 F.3d 161, 173 (5th Cir. 2010). Such interest is calculated "at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve system, for the calendar

---

[5] *Boston Old Colony Ins. Co. v. Tiner Assocs., Inc.*, 288 F.3d 222, 234 (5th Cir. 2002).

7

week preceding." 28 U.S.C. § 1961(a). The Court takes judicial notice[6] that the average yield for the week preceding this week was .52%.[7] Accordingly, the Court concludes that post-judgment interest of .52% is appropriate.

### 4. Summary

In sum, the Court concludes that Helena Chemical is entitled to damages in the amount of $110,781.80, plus post-judgment interest at the rate of .52%.

## III
## Conclusion

For the reasons above, Helena Chemical's motion for default judgment [14] is **GRANTED**. A separate judgment will be entered consistent with this opinion.

**SO ORDERED**, this 21st day of April, 2016.

/s/ **Debra M. Brown**
**UNITED STATES DISTRICT JUDGE**

---

[6] *See Schleben v. Carpenters Pension Tr. Fund-Detroit and Vicinity*, No. 14-cv-11564, 2016 WL 806707, at *2 (E.D. Mich. Mar. 2, 2016) (taking judicial notice of yield rates).

[7] *See* Board of Governors of the Federal Reserve System, *H.15 (519) Selected Interest Rates*, April 18, 2016, available at http://www.federalreserve.gov/releases/h15/default.htm (last accessed April 21, 2016).